## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| **STATE OF DELAWARE** | ) | |
| | ) | |
| | ) | **Case No. 1310019248** |
| **v.** | ) | |
| | ) | |
| **CHRISTOPHER WHEELER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

Submitted: July 11, 2014
Decided:   September 18, 2014

Upon Defendant Christopher Wheeler's Motion to Suppress
***DENIED***

Abigail Layton, Deputy Attorney General and David Holloway, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *Attorneys for the State of Delaware.*

Thomas A. Foley, Esquire, Wilmington, Delaware, *Attorney for Defendant.*

**DAVIS, J.**

Defendant Christopher Wheeler has filed a motion to suppress (as amended and modified, the "Motion") evidence collected from his home and office during a search executed pursuant to two warrants.   Police searched Mr. Wheeler's home and office and seized multiple electronic devices and digital media.   During the subsequent review of one of Mr. Wheeler's computers, police found files that purport to contain child pornography.   For the reasons set forth below, the Motion is denied.

## BACKGROUND

### FACTUAL BACKGROUND

On October 22, 2013, the Wilmington Police Department, working in concert with the State of Delaware, sought and obtained two search warrants from this Court.   The first search warrant ("Warrant 1") was for Mr. Wheeler's residence located in Wilmington, DE and a 2011

Chevrolet Equinox owned by Mr. Wheeler.   The second search warrant ("Warrant 2") was for Mr. Wheeler's office at the Tower Hill School and for the same vehicle.   Except as to location to be searched, Warrant 1 and Warrant 2 (collectively, the "Warrants") are virtually identical.

The Warrants are each supported by an affidavit of probable cause.   The two affidavits of probable cause are substantially similar, except that the affidavit of probable cause supporting Warrant 2 is longer and contains slightly more facts than Warrant 1.[1]   The affiants for the Warrants are Detective Cecilia Ashe and Chief Investigator Robert J. Irwin.   Detective Ashe is a detective with the Wilmington Police Department, having served in that capacity since September 11, 2006.   Chief Investigator Irwin is with the Delaware Department of Justice and is currently assigned to the Child Predator Task Force.[2]   Investigator Robert Schreiber of the Delaware Department of Justice is mentioned throughout the Affidavits.   Investigator Schreiber is an investigator who provided information to Detective Ashe and Chief Investigator Irwin for the Affidavits.

The Warrants sought to gather evidence for the crimes of Tampering with a Witness, 11 Del. C. § 1263(3), and Act of Intimidation of a Witness, 11 Del. C. § 3532.   The "items to be searched and seized" under the Warrants included: (a) safes, boxes, bags, compartments, storage areas; (b) any computer or digital storage device (desktops, laptops, notebooks, PDAs or tower style systems); (c) any cellular phone; and (d) any digital or optical data storage device connected

---

[1] The "History and Facts of the Complaint" section of Warrant 1's affidavit of probable cause is approximately three pages and contains twenty-five numbered paragraphs.   The "History and Facts of the Complaint" section of Warrant 2's affidavit of probable cause is approximately three and a half pages and contains twenty-eight numbered paragraphs.   For purposes of this decision, Warrant 1's affidavit of probable cause will be referred to as "Affidavit 1," Warrant 2's affidavit of probable cause will be referred to as "Affidavit 2," and Affidavit 1 and Affidavit 2 will be collectively referred to as the "Affidavits."

[2] The affidavits also list out Chief Investigator Irwin's experience as a police officer from 1979 until his retirement in 2002.   Furthermore, the affidavits provide the various schools and seminars that Chief Investigator Irwin attended relating to sexual crimes committed against children and computer investigation.   Chief Investigator Irwin is also a Certified Forensic Computer Examiner.

2

to, or capable of being connected to, any computer or digital storage device. The Warrants also sought to collect, for forensic examination, any and all data stored by whatever means on those computers, digital storage devices, cellular phones and optical data storage devices seized under the Warrants.

The Affidavits state that Mr. A spoke with authorities in Delaware on October 14, 2013.[3] During that discussion, Mr. A (age 43) stated that he was molested by Mr. Wheeler approximately 30 years ago, when Mr. Wheeler lived at Mr. A's residence in Pennsylvania. In light of the recent Jerry Sandusky/Penn State scandal, Mr. A decided to tell his two adult brothers, Mr. B (age 48) and Mr. C, what had happened to Mr. A when he was 12-13 years old. Upon telling his two brothers, Mr. B also disclosed that he had been molested by Mr. Wheeler when Mr. B was 13-15 years old. Mr. C told his brothers that he was never physically or sexually abused by Mr. Wheeler, but that Mr. Wheeler has engaged in inappropriate sexual conversations with Mr. C when Mr. C was a teenager.

The Affidavits provide that in July 2013, Mr. A sent a letter to Mr. Wheeler, confronting Mr. Wheeler about what had happened, writing "I shudder at the notion that you, in your career, have chosen an environment that brings you into daily contact with other boys who are as old as I was when you molested me." Mr. A provided a copy of this letter to the authorities in Delaware. The letter also provides that Mr. A "wants nothing to do with Chris Wheeler ever and wants him to stay away from him and his family." The Affidavits do not contain a full transcription of the

---

3 The parties and this Court have referred to the victims and witnesses in this case by non-descript titles – e.g., Mr. A, Mr. B, Mr. C and Mr. D – in any public proceeding. The use of these place holder names may lead to some confusion in this decision, but this Court feels the use to be necessary. Pursuant to Administrative Directive of the President Judge of the Superior Court of the State of Delaware, No. 2000-5, Policy on Public Access to Superior Court Judicial Records and 11 Del. C. § 9401et seq, this Court has sealed documents containing the names of victims and witnesses and made such documents available only after the documents have been reviewed and redacted. *See* Order dated May 28, 2014.

letter.

The Affidavits further state that Mr. B sent a similar letter to Mr. Wheeler. A copy of this letter was provided to Delaware authorities. Mr. B did invite a response in his letter, asking "[w]hat does justice look like for the abuses you perpetuated and the harms you caused? What role (if any) should you play in determining appropriate resolution to and restitution for the abuses you have caused." Mr. Wheeler responded to Mr. B's letter on July 23, 2013. Mr. Wheeler's letter was in type written form. In his letter, Mr. Wheeler said "I will not compound your pain by attempting to deny or in any way deflect responsibility for my actions 35 years ago. I did those things. I am the one responsible. I'll wait to hear from you about further appropriate steps towards resolution and restitution." The Affidavits set out that the Delaware authorities were provided with a copy of Mr. Wheeler's July 23, 2013 letter and that Mr. B is in possession of the original signed letter. The full contents of Mr. B's letter and Mr. Wheeler's July 23, 2013 letter are not contained in the Warrants.

The Affidavits go on to provide that Mr. A told the Delaware authorities that Mr. C confronted Mr. Wheeler in a face-to-face meeting in Wilmington. At that meeting, Mr. Wheeler admitted to Mr. C that he had responded to Mr. B's letter and that Mr. Wheeler had not responded to Mr. A's letter because "to do so would have been contrary to Mr. A's wishes."

Investigator Schreiber interviewed Mr. C regarding his meeting with Mr. Wheeler. Mr. C stated that he communicated with Mr. Wheeler by telephone and e-mail. Mr. Wheeler used his Tower Hill e-mail address to coordinate his meeting with Mr. C in Wilmington. Mr. C said that he met with Mr. Wheeler at Mr. Wheeler's home in Wilmington on July 25, 2013. During that meeting, Mr. Wheeler acknowledged his inappropriate contact with Mr. B and Mr. A and appeared

4

apologetic for his actions. Mr. Wheeler stated that he was going to meet with his son, Mr. D, to tell him about Mr. Wheeler's abuse of Mr. A and Mr. B. Mr. C told Investigator Schreiber that Mr. Wheeler conveyed to Mr. C that Mr. Wheeler had contemplated suicide.

According to the Affidavits, Investigator Schreiber interviewed the wife of Mr. A. Mr. A's wife related that in 2008, Mr. Wheeler and Mr. D were residing at the home of Mr. A's parents. Mr. D approached Mr. A's wife and began talking to her of men having anal sex with men. Mr. D also told her that he had run away from Mr. Wheeler multiple times and wanted to live with Mr. A's parents. Mr. A's wife stated that Mr. A's mother had similar discussions with Mr. D, but that when Mr. A's mother talked to Mr. Wheeler about this Mr. Wheeler advised her that Mr. D told these stories because Mr. D came from a prostitute mother and had a difficult background. Investigator Schreiber interviewed Mr. A's parents. Mr. A's mother provided that when Mr. D and a girlfriend were visiting three years ago, Mr. D complained that Mr. Wheeler had abused him.

The Affidavits state that, on October 8, 2013, a local police department in North Carolina responded to Mr. D's residence. The October 8, 2013 incident report indicates that the responding officers arrived to find Mr. Wheeler and Mr. D arguing in the driveway. Mr. D appeared angry and upset. The officers noticed an odor of alcohol coming from Mr. D. Mr. D's residence had several broken doors and window blinds and there was a smashed bottle on the floor. The police interviewed Mr. Wheeler who told police that Mr. D had been diagnosed with bipolar and manic depression and that Mr. D was despondent over breaking up with his girlfriend. Mr. D informed police that he had been drinking and wanted to sleep. Mr. D also provided that he was despondent over the recent breakup and had sent a text message to Mr. Wheeler, and had stated in the message that he was going to kill himself.

5

The Affidavits then provide that Investigator Schreiber contacted the local police department in North Carolina on October 22, 2013. The local police officer who responded on October 8, 2013 told Investigator Schreiber that while investigating the incident, Mr. D told him that Mr. Wheeler would penetrate his anus and that he never previously reported this to the authorities because Mr. Wheeler would pay him off. Mr. D stated that this conduct had occurred when Mr. D and Mr. Wheeler lived in Illinois.

The Affidavits conclude with broader statements regarding electronic evidence and written communications. The affiants state that, "from training and experience," computers will retain information and documents and that this information can be retrieved through a computer forensic process. Moreover, e-mails and other electronically stored communications can be maintained on computer hard drives. The affiants claim that they have reason to believe that cellular phones may contain evidence as it is normal for a person to keep information on the cellular phones for purposes of reviewing text messages, reading and responding to e-mails or to access the internet. Finally, the affiants contend that there is a need to search Mr. Wheeler's home and office to determine if there is any evidence of written communications with the victims.

After reviewing the Warrants and the Affidavits, a Superior Court judge (the "Issuing Judge") made a determination that there was probable cause to search and seize the property described in the Warrants. The Warrants were then issued. The State executed the Warrants on October 22, 2013. The State seized, in part, a Mac Powerbook G4, two Western Digital Elements external hard drives, an iPad, two iMacs, a MacBook Pro, two iPhones, a Tungsten Palm, 26 CDs, and 23 DVDs.

The State initiated a forensic process on the various electronic devices seized. During that

6

forensic process, Sergeant Kevin Perna of the Delaware State Police Department opened up a parent directory and saw a series of video files labled "GERBYS II" and "hippodrome boys large." Because Sergeant Perna was not familiar with these videos, Sergeant Perna did not open the files. Instead, Sergeant Perna consulted two colleagues. These colleagues informed Sergeant Perna that these types of files are German and Russian originated videos of prepubescent boys engaging in sex acts. On October 29, 2013, the State obtained an additional search warrant from the Kent County Superior Court to search all previously seized devices for child pornography. The State did not open the video files until after the State had obtained the search warrant. After viewing the files, the State sought an indictment against Mr. Wheeler on charges of dealing in child pornography.

**PROCEDURAL HISTORY**

On December 13, 2013, the Grand Jury returned an indictment against Mr. Wheeler. Through the indictment, Mr. Wheeler was charged with twenty-five counts of Dealing in Child Pornography in violation of 11 Del. C. § 1109(4). This Court entered a scheduling order on April 8, 2014, setting the trial date in this criminal action for October 7, 2014.

On March 4, 2014, Mr. Wheeler filed his initial Motion to Suppress. After a status conference with the parties, the Court set May 1, 2014 as a deadline for Mr. Wheeler to file an amended Motion to Suppress. The Court subsequently extended the May 1, 2014 deadline until May 5, 2014. On May 5, 2014, Mr. Wheeler filed his Amended and Superseding Motion to Suppress.[4] Mr. Wheeler also requested that the hearing on the Motion be an evidentiary hearing with testimony from certain witnesses and a defense expert witness. On May 15, 2014, the State

---

4 As stated above, the Motion to Suppress and the Amended and Superseding Motion to Suppress will be collectively referred to as the "Motion".

filed its Response of the State to the Defendant's Motion to Suppress (the "Response").   Mr. Wheeler replied, through a letter memorandum of law, to the Response on May 22, 2014.

On May 23, 2014, the Court held a hearing on the Motion.   At the hearing, the State presented the testimony of Sergeant Perna.   Mr. Wheeler had the opportunity to cross-examine Sergeant Perna.   Mr. Wheeler also presented testimony from his expert witness, Tami L. Loehrs. During the hearing, the parties admitted seven exhibits into evidence.   These exhibits are: (i) Resume of Kevin Anthony Perna (State's Ex. 1); (ii) EnCase Forensic Example 1 (State's Ex. 2); (iii) EnCase Forensic Example 2 with Keyword Search Terms (State's Ex. 3); (iv) EnCase Forensic Example 3 (State's Ex. 4); (v) EnCase Forensic Example 4 with Search on File Name (State's Ex. 5); (vi) EnCase Forensic of Mr. Wheeler's computer (State's Ex. 6); and (vii) Cirriculum Vitae of Tami L. Loehrs (Defense Ex. 1).   The Court then continued the hearing to a date to be determined in June or July.   After the May 23, 2014 hearing, Mr. Wheeler filed a letter memorandum of law which, according to Mr. Wheeler, addressed any and all remaining matters relating to the Motion.   In response, the State filed the State's Memorandum in Opposition to an Evidentiary Hearing.

The Court held a hearing on the Motion on July 11, 2014, and heard final arguments from the parties on the Motion.   At the conclusion of the hearing on July 11, 2014, the Court reserved decision on the Motion.

In addition to the seven exhibits admitted into evidence at the May 23, 2014 hearing, the Court has reviewed and considered the exhibits attached by the parties to the various papers filed with the Court.   These include: (i) Warrant 1; (ii) Warrant 2; (iii) Telephone Transcript of call between Mr. C and Investigator Schreiber; (iv) Search Warrant dated October 29, 2013 issued by

the Superior Court of the State of Delaware in and for Kent County; (v) Affidavit of Tami L. Loehrs dated April 10, 2014; (vi) Search Warrant dated October 25, 2013 issued by Justice of the Peace Court 20, City of Wilmington, State of Delaware; (vii) Letter dated July 20, 2013 from Mr. B to Mr. Wheeler; (viii) Letter dated July 23, 2013 from Mr. Wheeler to Mr. B; (ix) Telephone Transcript of call among Mr. A, Investigator Schreiber and Special Investigator Lester Johnson; and (x) Search Warrant dated December 18, 2012 issued by Justice of the Peace Court 2, New Castle County, State of Delaware. The Court, in coming to its decision here, considered all exhibits submitted by the parties (whether through the testimony of a witness or otherwise) and the testimony provided at the May 23, 2014 hearing due to the various issues raised and arguments made by the parties throughout the proceedings on the Motion.

THE PARTIES CONTENTIONS

**MR. WHEELER**

Mr. Wheeler makes two general arguments in support of suppression of the Warrants. First, Mr. Wheeler contends that the Warrants fail to provide any factual basis to establish that Mr. Wheeler committed the crimes of Tampering with a Witness and Act of Intimidation of a Witness. Mr. Wheeler argues that the Affidavits present no facts or allegations that support the idea that Mr. Wheeler ever intimidated or threatened a witness. Mr. Wheeler also claims that there is no assertion as to what evidence, if any, relating to the alleged offenses would be found within the items to be searched. As such, Mr. Wheeler claims that the Issuing Judge could not have found probable cause that Mr. Wheeler committed the crimes of Tampering with a Witness and Act of Intimidation of a Witness or that evidence of such wrongdoing would be found in the "items to be searched for and seized."

9

Second, Mr. Wheeler, relying on *Rivera v. State*,[5] contends that the State recklessly omitted several exculpatory facts from the Affidavits. Had those facts been included, Mr. Wheeler urges, the judge would have been unable to find probable cause. According to Mr. Wheeler, the Affidavits should have included the following exculpatory facts: (1) Mr. A, Mr. B and Mr. C never mentioned to Mr. Wheeler that they were contemplating contacting law enforcement officers; (2) an accurate and full account of Mr. Wheeler's July 23, 2013 letter to Mr. B; (3) an accurate and full account of Mr. C's face-to-face meeting with Mr. Wheeler; and (4) Mr. A's remarks to the State that Mr. A's parents had questions regarding the credibility of Mr. D.

**THE STATE**

In opposition, the State argues that, under the totality of the circumstances, the Affidavits set forth probable cause to establish that a search of Mr. Wheeler's residence and office would reveal evidence pertinent to the crimes of Tampering with a Witness and Act of Intimidation of a Witness. The State contends that the Wilmington Police Department received information supporting a pattern of behavior by Mr. Wheeler under which he would sexually abuse minor boys and then pay them off or offer to do so, and that the Affidavits articulated with specificity, facts relating to this pattern of behavior. As to Mr. Wheeler's second argument, the State claims that Mr. Wheeler has not demonstrated, by a preponderance of the evidence, that any omitted information was material, or that the information was omitted from the Warrants in reckless disregard of the truth.

**APPLICABLE LEGAL STANDARDS**

On a motion to suppress challenging the validity of a search warrant, the defendant has the burden of establishing that a search or seizure violated his rights under the United States

---

5 *Rivera v. State*, 7 A.3d 961, 968 (Del. 2010).

Constitution, the Delaware Constitution, or the Delaware Code.[6]  The defendant must show he is entitled to relief by a preponderance of the evidence.[7]

Under the Delaware and the United States Constitutions, "a search warrant may be issued only upon a showing of probable cause."[8]  Delaware constitutional requirements for search warrants are codified in Title 11, Sections 2306 and 2307 of the Delaware Code.  Pursuant to Section 2306, the application for a search warrant must "state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated [in the search warrant application] and shall recite the facts upon which suspicion is founded."[9]  Under Section 2307, a warrant may issue only upon a judicial determination of probable cause.[10]

Delaware courts engage in a four-corners test to make a probable cause determination.[11] Within the four-corners of the search warrant affidavit, the document must present sufficient facts for a judge or magistrate to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place.[12]

---

6 *State v. Holton,* I.D. No. 1101000487, 2011 WL 4638781, at * 2 (Del. Super. Sept. 22, 2011)*; State v. Cannon,* I.D. No. 0701003821, 2007 WL 1849022, at *2 (Del. Super. June 27 2007); *see also Sisson v. State*, 903 A.2d 288, 296 (Del. 2006).

7 *Id.*

8 U.S. Const. Amend. IV; Del. Const. art. I, § 6; *Sisson*, 903 A.2d at 296.

9 11 *Del. C.* § 2306 (2001) ("The application or complaint for a search warrant shall be in writing, signed by the complainant and verified by oath or affirmation. It shall designate the house, place, conveyance or person to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated and shall recite the facts upon which such suspicion is founded.").

10 11 Del. C. § 2307 (2001) ("If the judge, justice of the peace or other magistrate finds that the facts recited in the complaint constitute probable cause for the search, that person may direct a warrant to any proper officer or to any other person by name for service. The warrant shall designate the house, place, conveyance or person to be searched, and shall describe the things or persons sought as particularly as possible, and may be returnable before any judge, justice of the peace or magistrate before whom it shall also direct to be brought the person or thing searched for if found, and the person in whose custody or possession such person or thing is found, to be dealt with according to law.").

11 *Sisson*, 903 A.2d at 296.

12 *Id.* (*citing* 11 *Del. C.* §2306; *Dorsey v. State*, 761 A.2d 807, 811 (Del. 2000)).

When determining whether probable cause to obtain a search warrant exists, the Court will apply a totality of the circumstances test.[13] This analysis allows a judge or magistrate to draw reasonable inferences from the factual allegations within the affidavit.[14] As such, probable cause may exist under the totality of the circumstances where "there is a fair probability that contraband or evidence of a crime will be found in a particular place."[15]

While the four-corners test "restricts the scope of a reviewing courts inquiry," the Court is still permitted to use common sense in its analysis.[16] This allows the Court to avoid a hypertechnical approach when reviewing a search warrant.[17] Moreover, the Court must give great deference to the judge or magistrate who initially finds probable cause to issue a search warrant.[18] But, the Court must still determine whether the information provides the judge or magistrate with a substantial basis to find probable cause.[19]

In *Franks v. Delaware*, the United States Supreme Court held that a search warrant may be invalidated if a defendant proves that the affiant "knowingly and intentionally, or with reckless disregard for the truth," included in the affidavit false or misleading statements which were necessary to establish probable cause.[20] The Delaware Supreme Court has extended the *Franks* holding to omissions of material information by an affiant when seeking a search warrant.[21] In this extension, a defendant must establish, by a preponderance of the evidence, that the police knowingly and intentionally, or with reckless disregard for the truth, omitted material information

---

13 *Id.* (*citing Fink v. State*, 817 A.2d 781, 787 (Del. 2003)). *See also Gardner v. State*, 567 A.2d 404 (Del. 1989).
14 *Id.*
15 *Id.* (*citing Stones v. State,* 1996 WL 145775, at *2 (Del.1996) (Order) (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).
16 *See Holton*, 2011 WL 4638781, at *3.
17 *Id.*
18 *Sisson*, 903 A.2d at 296.
19 *Holton*, 2011 WL 4638781, at *3.
20 *Franks v. Delaware*, 38 U.S. 154, 155-56 (1978).
21 *Rivera*, 7 A.3d at 969.

from the warrant.[22] Omissions are made with reckless disregard of the truth when an affiant recklessly omits facts than any reasonable person would know that a judge would want to have in making a probable cause determination.[23] To determine whether an omission is material to a finding of probable cause, the reviewing court must reconstruct the affidavit to include the newly added information to determine whether the "corrected" affidavit still gives rise to probable cause.[24] If the reviewing court determines in the first instance that the omitted information was not material, then that court does not have to determine whether the omissions were made with reckless disregard.[25]

## ANALYSIS

### A. MR. WHEELER HAS FAILED TO MEET HIS BURDEN THAT THE WARRANTS WERE NOT VALID

The Issuing Judge in issuing the Warrants properly determined that there was probable cause that Mr. Wheeler committed the crimes of Act of Intimidation or Tampering with a Witness. Moreover, the Warrants demonstrated the necessary probable cause that evidence to be seized relating to the crimes would be found in the places to be searched.

The relevant crimes here are Act of Intimidation of a Witness and Tampering with a Witness. A person is guilty of the Act of Intimidating a Witness when that person knowingly and with malice attempts to prevent another person who has been the victim of a crime, or a witness to a crime, from:

> (1) Making any report of such crime or victimization to any peace officer, law-enforcement officer, prosecuting agency, probation officer, parole officer, correctional officer or judicial officer

---

22 *Id.* at 968-69.
23 *Id*. at 969.
24 *Id.*
25 *Id.*

13

(2) Causing a complaint, indictment, information, probation or parole violation to be sought or prosecuted, or from assisting in the prosecution thereof; or

(3) Arresting, causing or seeking the arrest of any person in connection with such crime or victimization.[26]

A person is guilty of Tampering with a Witness when that person "knowingly intimidates a witness or victim under circumstances set forth in [11 Del. C. § 3532]."[27]

This Court reviews the Issuing Judge's probable cause determination with great deference, considering it as a whole in a practical, commonsense manner, and not on the basis of a hypertechnical analysis of its separate allegations.[28]   This Court does so because "[a] grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant…."[29]   Therefore, this Court's duty is to simply ensure that the Issuing Judge had a substantial basis for concluding that probable cause existed.   Here, the Issuing Judge had a substantial basis for concluding that under the totality of the circumstances there was a fair probability that a crime had been committed and that Mr. Wheeler committed the crime.

The Affidavit contains numerous allegations that could support the crimes of Act of Intimidation of a Witness and Tampering with a Witness.   The Affidavits state that Mr. Wheeler engaged in, or attempted to engage in, acts to prevent another person (victim or witness) from reporting crimes.   For example, Mr. Wheeler purportedly paid off Mr. D to keep him from reporting sexual abuse by Mr. Wheeler to the police.[30]   Mr. Wheeler sent a letter to Mr. B stating

---

26 11 *Del. C.* § 3532.
27 11 Del. C. § 1263(3).
28 *Sisson*, 903 A.2d at 296.
29 *Smith v. State*, 887 A.2d 470, 473 (Del. 2005)(quoting Illinois v. Gates, 462 U.S. 213, 236 (1983)).
30 Affidavit 1 at ¶ 20; Affidavit 2 at ¶ 20 (as there are two ¶ 20s in Affidavit 2, this reference is to the second ¶ 20 on

that he would wait for Mr. B to provide "appropriate steps towards resolution and restitution."[31] Moreover, Mr. Wheeler communicated with Mr. C by phone and e-mail and later met with Mr. C regarding Mr. Wheeler's abuse of Mr. A and Mr. B.[32] At that meeting, Mr. Wheeler allegedly attempted to influence Mr. C regarding his inappropriate (and illegal) behavior by claiming he was going to tell Mr. D of his conduct and was contemplating suicide over the situation.[33] This could be seen as an attempt to prevent Mr. A or Mr. B, once they heard this from Mr. C, from reporting any crime. Mr. Wheeler also worked to prevent other witnesses from reporting his conduct. For example, Mr. Wheeler told Mr. A's mother that Mr. D's stories of men having anal sex with other men should be discounted because Mr. D had a troubled past.[34] And, Mr. Wheeler told local police authorities in North Carolina that Mr. D suffered from bipolar disorder and manic depression which description most likely worked against Mr. D's credibility with those police authorities when he told them about Mr. Wheeler's abuse of Mr. D.[35]

Under the totality of the circumstances, taking all reasonable inferences to be drawn from the facts alleged in the Affidavits, the information contained in the four-corners of the Affidavits set forth probable cause that a crime had been committed and Mr. Wheeler had committed those crimes. On this record, the Issuing Judge was presented with a substantial factual basis for making that conclusion. As such, this Court will not disturb the decision of the Issuing Judge on this issue.

This Court also finds that the Issuing Judge properly determined that there was a nexus

---

page 8).

[31] Affidavit 1 at ¶ 12; Affidavit 2 at ¶ 13.

[32] Affidavit 1 at ¶¶13,18; Affidavit 2 at ¶¶15, 20.

[33] Affidavit 1 at ¶ 18; Affidavit at 2 at ¶ 20.

[34] Affidavit 1 at ¶ 14; Affidavit 2 at ¶ 16.

[35] Affidavit 1 at ¶ 19; Affidavit 2 at ¶ 19.

between the crimes purportedly committed and the evidence sought at Mr. Wheeler's home and office. The Affidavits provide that the basis of the Act of Intimidation of a Witness and Tampering with a Witness arose out of communication between Mr. Wheeler and Mr. B, Mr. C and Mr. D. These communications took place through text messages, cellular telephone calls, e-mail and written correspondence.

The Affidavits set out that Mr. Wheeler communicated with Mr. C by way of cellular phone and e-mail. Mr. Wheeler's e-mails were from his work e-mail address. Mr. Wheeler also provided type-written communication to Mr. B. The reasonable inference in today's "high tech" society is that Mr. Wheeler used a computer and not a typewriter to compose the written communications. Finally, the Affidavits provide that Mr. Wheeler communicated with Mr. D by text messages. The Warrants authorized the seizure and search of cellular phones, computers and written correspondence. The Issuing Judge had a substantial basis for concluding that a fair probability existed that Mr. Wheeler used his home or office computers, notebooks, cellular phones and digital storage devices and that these devices could contain relevant information and documents, and that information could be retrieved through a forensic process, to the asserted crimes.

Mr. Wheeler also claims that the State exceeded the lawful scope of the Warrants. In this argument, Mr. Wheeler contends that Sergeant Perna, while waiting for a keyword list search to complete, conducted a cursory, and overly broad, search of subfolders of Mr. Wheeler. Mr. Wheeler argues that this cursory search was a search beyond the scope of the Warrants. The facts do not support Mr. Wheeler's argument.

The Court heard testimony from Sergeant Perna at the May 23, 2014 hearing. Mr.

16

Wheeler had an opportunity to question Sergeant Perna. Sergeant Perna is a credible witness. Sergeant Perna understood that he was to examine digital evidence and to look for any files created in or saved as word documents, e-mails, text messages, .pdf formatted documents or other related file formats. Sergeant Perna specifically testified that he was not looking for images or videos.

Sergeant Perna, using EnCase forensic software, initiated a keyword search and while waiting for that search to conclude began a search of those folders on the hard drive of Mr. Wheelers' computer that might contain word documents, e-mails, .pdf formatted documents. Sergeant Perna said this was his ordinary practice as keyword searches are not perfect and eventually there would be a need to do a manual search of certain file folders and subfiles that could contain the types of documents authorized to be obtained under the Warrants. Although available, Sergeant Perna did not employ these filters or restrictions when he did his search. Sergeant Perna testified that when a person using EnCase forensic software clicks on a file folder the software not only opens the file but also any subfiles connected with the file folder. Sergeant Perna also stated that EnCase forensic software contains filters and alike that can limit the scope of a search.

Sergeant Perna selected the "desktop" file folder to open it. When Sergeant Perna opened the desktop file, all subfiles opened as well. The subfiles contained a large number of items entitled "GERBYS II" and "hippodrome boys large."[36] Because Sergeant Perna was not familiar with these videos, Sergeant Perna did not open the files. Instead, Sergeant Perna consulted two colleagues. These colleagues informed Sergeant Perna that these types of files are German and Russian originated videos of prepubescent boys engaging in sex acts. At this point, the State

---

36 Exhibit 6 from the May 23, 2014 hearing.

obtained a third search warrant, this one from the Kent County Superior Court,[37] and thereafter opened the items entitled "GERBYS II" and "hippodrome boys large." After viewing the files, the State sought and obtained an indictment against Mr. Wheeler on twenty-five counts of Dealing in Child Pornography in violation of 11 Del. C. § 1109(4).

Based on the evidence presented, the Court holds that Sergeant Perna's search was not overly broad. The Court agrees with the State that the evidence here shows that the "GERBYS II" and "hippodrome boys large" items were located where a person with the type of training and experience possessed by Sergeant Perna might expect to find word documents or .pdf formatted documents. The Court notes that if Sergeant Perna were looking in the first instance for child pornography, as claimed by Mr. Wheeler, then Sergeant Perna could have easily clicked on the "movies" file folder, the "Wheeler – Mass 2005.iMovieProject" or even the "downloads" file folder.[38] Sergeant Perna did not. Instead, Sergeant Perna started with a file, "desktop," that Sergeant Perna testified was the type of file, in his experience, could contain documents within the scope of an authorized search. It is true that Sergeant Perna did not employ any filters that would have restricted his search. Moreover, Ms. Loehrs testified that she would have done the search differently. However, Mr. Wheeler did not produce any evidence that Sergeant Perna's search approach (even absent the use of filters), and subsequent opening of the "desktop" file folder, violated any recognizable search protocol or alike.

---

[37] The State obtained the third warrant from the Kent County Superior Court because the search of Mr. Wheelers' computer took place in the offices of the Delaware State Police High Technology Crimes Unit. These offices are located in Kent County in Dover, DE.

[38] In the June 11, 2014 letter memorandum of law submitted to this Court, Mr. Wheeler conceded that there is nothing "per se unlawful" in the State obtaining a search warrant for one crime even if the State is really searching for evidence of another crime. As such, this Court has not addressed any argument that the Warrants would be invalid on this argument. Although, the Court notes that the factual record here does not demonstrate, by a preponderance of the evidence , that the State used the crimes of Tampering with a Witness and Act of Intimidating a Witness as a pretext to search for child pornography.

The Warrants validly placed Sergeant Perna in a position to examine the "desktop" file. The "desktop" file contained documents entitled "GERBYS II" and "hippodrome boys large." Having developed a reasonable suspicion, Sergeant Perna did not open these files, asked for assistance and then obtained a search warrant to open the files. Under these circumstances, this Court concludes that the search by the State did not exceed the scope of the Warrants.

**B.      MR. WHEELER HAS NOT DEMONSTRATED THAT THE AFFIANTS RECKLESSLY OR INTENTIONALLY OMITTED MATERIAL INFORMATION FROM THE AFFIDAVIT**

Mr. Wheeler argues that the State was not forthcoming with all pertinent information when the State applied for the Warrants. Mr. Wheeler contends that the Warrants were "designed" to steer the Issuing Judge to believe that Mr. Wheeler had committed the crimes when in fact Mr. Wheeler's conduct with respect to Mr. A, Mr. B, Mr. C and Mr. D was apologetic and open. Mr. Wheeler supports his arguments by contending that if the State had provided full copies of Mr. Wheeler's July 23, 2013 letter, the transcript of Mr. C's interview with Investigator Schreiber, and that Mr. A's parents had some questions regarding Mr. D's credibility, then the Issuing Judge could not have been left with the impression that Mr. Wheeler committed the crimes of Act of Intimidation of a Witness and Tampering with a Witness. Under Mr. Wheeler's contention, the State acted recklessly or intentionally by crafting the Affidavits in a way to mislead the Issuing Judge, and that the omitted parts of Mr. Wheeler's July 23, 2013 letter and Mr. C's recorded interview were material enough that, if included, the Issuing Judge would not have approved and issued the warrants.

If the State omitted facts that are material to a finding of probable cause and do so with reckless or intentional disregard for the truth, the Warrants would have to be suppressed.[39] After

---

39 *Sisson*, 903 A.2d at 300.

the various hearings, the testimony of Sergeant Perna and Ms. Loehrs and a review of all of the exhibits submitted by the parties (including Mr. Wheeler's July 23, 2013 letter and the full transcript of Mr. C's interview), this Court finds that Mr. Wheeler has not demonstrated by a preponderance of the evidence that the State either intentionally or recklessly withheld material information from the Issuing Judge. Moreover, this Court concludes that none of the "withheld" information identified by Mr. Wheeler would have made a difference in the probable cause analysis.

There has been no testimony, or other evidence, here that demonstrates that the State acted recklessly or intentionally. With all fairness, the Court notes that Sergeant Perna and Ms. Loehrs were not called to testify on this issue. Rather, Sergeant Perna testified about operating procedures when engaging in a forensic retrieval of information and his actual work leading up to the warrant issued on October 29, 2013 by the Kent County Superior Court. Mr. Wheeler called Ms. Loehrs and had her testify, as an expert, on whether Sergeant Perna's search of Mr. Wheeler's computer went beyond the scope of the search warrant.

Without any testimony on the propriety of the State's actions in obtaining the Warrants, Mr. Wheeler asks for an inference of intentional or reckless action because, he argues, clearly critical information was omitted from the Affidavits. Omissions are made with reckless disregard if an affiant withholds a fact that in his or her comprehension that "any reasonable person would have known that this was the kind of thing the [issuing] judge would wish to know."[40] Moreover, a court may infer recklessness where the omitted information was "clearly critical" to the probable cause determination.[41]

---

40 *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000).
41 *Sisson*, 903 A.2d at 301 (relying on *Rivera v. U.S.*, 928 F.2d 592, 604 (2d Cir. 1991).

On the record here, this Court finds that there is not sufficient evidence to independently infer that the State acted with reckless disregard for the truth. Although the omitted parts of Mr. Wheeler's July 23, 2013 letter, the transcript of Mr. C's interview and the fact that Mr. A's parents had some questions regarding Mr. D's credibility may present some evidence tending to establish the State acted recklessly, this Court finds that evidence fails to meet the necessary preponderance of the evidence standard. Even Mr. Wheeler concedes that the Affidavits include parts of Mr. Wheeler's July 23, 2013 letter – the parts relating to acceptance of responsibility and the offer of resolution and restitution – and parts of the transcript of Mr. C's interview – the parts relating to admission of acts, confession to Mr. D and being apologetic and suicidal. Moreover, the Affidavits clearly provide that Mr. D was under the influence when he made the statements regarding Mr. Wheeler's conduct and purported payments of "hush money." Certainly, the State omitted other parts of these documents and left out Mr. A's parents concerns as to Mr. D's credibility, but this Court cannot reasonably conclude that the omissions -- of contrition, acceptance of responsibility, etc. -- were anything other than cumulative of what was already provided in the Affidavits.

The above analysis is relevant to the second part of the test – materiality of the omitted facts. Even reconstructing the Warrants and including the omitted items, the Issuing Judge still could have determined that there was a fair probability that a search of Mr. Wheeler's office, home, computers, cellular phone and digital storage devices would reveal additional evidence relating to the crimes of Tampering with a Witness and Act of Intimidation of a Witness. This Court notes that the omitted items may have made it less likely that probable cause existed, but would not have entirely vitiated the Issuing Judge's determinations regarding probable cause.

21

**CONCLUSION**

Based on the arguments above and applicable standards of review, this Court finds that Mr.

Wheeler has not carried his burden with respect to the validity of the Warrants.   Therefore, the

Motion is hereby **DENIED**.

Dated: September 18, 2014
Wilmington, Delaware

/s/ *Eric M. Davis*
Eric M. Davis, Judge

cc:  Prothonotary
   Abigail R. Layton, Esquire, Deputy Attorney General
   Thomas A. Foley, Esquire